## HUNT et al. v. CRUMBOCH et al.

### No. 8275.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 11, 1944.

Decided July 12, 1944.

See also 44 F.Supp. 796.

Peter P. Zion, of Philadelphia, Pa. (Hyman Maron, of Philadelphia, Pa., on the brief), for appellants.

William A. Gray, of Philadelphia, Pa. (Francis T. Anderson and Paul C. Van Dyke, both of Philadelphia, Pa., on the brief), for respondent.

Before MARIS, GOODRICH, and McLAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

On this appeal we are called upon to determine whether the district court erred in concluding that the plaintiffs had failed to prove a cause of action under the Sherman Anti-Trust Act, as amended by the Clayton Act, 15 U.S.C.A. §§ 1–7, 15. The facts were found by the district court substantially as follows:

The plaintiffs are copartners trading under the name of Hunt's Motor Freight and Food Products Transport. For a period of about fourteen years prior to February 4, 1939, practically the sole business of the plaintiffs was to transport produce and foodstuffs by motor truck for The Great Atlantic & Pacific Tea Company

(commonly known as the A & P) under contracts, both written and oral, with that company. From 80% to 85% of this transportation was interstate from and to Philadelphia. The trade union defendant, Brotherhood of Transportation Workers, Local 107, International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, is an unincorporated association of drivers and helpers engaged in "over the road hauling" and is affiliated with the American Federation of Labor. It is affiliated with numerous local and subsidiary unions situated throughout the United States, each of which represents a separate branch or class of employees engaged in and about the loading and hauling of produce by trucks.

Sometime in 1937 the union called a strike of the truckers and haulers of the A & P in Philadelphia for the purpose of enforcing a closed shop. The plaintiffs attempted to operate during the strike, and in July of 1937 refused the offer of the union to negotiate. The strike was attended with great violence and on September 4, 1937, one of the men connected with the union was shot and killed at or near the union headquarters. One of the plaintiffs, Edward A. Hunt, was tried in the Philadelphia courts for this homicide and was acquitted. On December 13, 1938, the A & P entered into a closed shop agreement with the union whereby the A & P recognized the union as the bargaining agent for its employees, as a result of which the various contract haulers who were similarly situated as the plaintiffs with the A & P recognized the union as the bargaining agent for their employees.

As a result of the agreement thus made between the A & P and the union, all employees of the A & P's various contract haulers were notified that they were required to join and become members of the union. At the time of the making of the closed shop agreement, the A & P had been employing the services of some twenty-five haulers (including plaintiffs) who were using about forty-eight trucks. The plaintiffs had eight trucks. All the haulers for the A & P except plaintiffs joined the union or made closed shop agreements with it. The plaintiffs attempted to make an agreement with the union but the union refused to negotiate, and still refuses to do so. The employees of the plaintiffs attempted to join the union, but were refused admission as long as they remained employees of the plaintiffs.

On February 4, 1939, the A & P at the instigation of the union cancelled its contract with the plaintiffs as of March 10, 1939, on the ground that plaintiffs were non-union. The plaintiffs' services had otherwise been satisfactory. From about November 6, 1939 to February 12, 1940 plaintiffs did interstate hauling for Sterling Supply Company of Philadelphia, but were compelled to desist under the same circumstances as accompanied the loss of the A & P contract. The elimination of the plaintiffs' services did not in any manner affect the interstate operations of the A & P or the Sterling Supply Company. The business of plaintiffs has been destroyed by reason of the union's refusal to negotiate with plaintiffs and the union's unwillingness to admit plaintiffs and their employees into the union.

In the light of the district court's finding, which is supported by the evidence, that the interstate business of the A & P and the Sterling Supply Company was not affected by the discontinuance of the plaintiffs' services, in other words, that the two companies continued to transport the same quantity of produce, foodstuffs and other products in interstate commerce as they would have done had they renewed their hauling contract with the plaintiffs, it is self-evident that in that respect the plaintiffs have not made out a cause of action, since there was in fact no restraint of the trade or commerce carried on by the A & P and the Sterling Supply Company. Accordingly, the sole question for our consideration is whether the fact that the defendants' actions caused the plaintiffs to go out of business and to cease hauling in interstate commerce is such a restraint upon interstate commerce as to be cognizable under the Sherman and Clayton Acts. This question must be answered in the negative. Congress did not undertake by the enactment of the Sherman and Clayton Acts to prohibit each and every restraint upon interstate commerce. It sought to prevent only those restraints upon free competition in business or commercial transactions which tend to restrict production, raise prices or otherwise control the market in goods or services to the detriment of the public. Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 60 S.Ct. 982, 1002, 84 L.Ed. 1311, 128 A.L.R. 1044.

904

The Sherman Act, said Justice Stone in the Apex Hosiery Co. case, "was not enacted to police interstate transportation, or to afford a remedy for wrongs, which are actionable under state law, and result from combinations and conspiracies which fall short, both in their purpose and effect, of any form of market control of a commodity, such as to 'monopolize the supply, control its price, or discriminate between its would-be purchasers.'" We must assume, for nothing to the contrary appears in the plaintiffs' case, that the number of haulers available to haul produce and foodstuffs was not diminished but simply that some other hauling concern took over the work formerly performed by the plaintiffs and that there was no increase in the cost of hauling traceable to the acts of the defendants in eliminating the plaintiffs from the field. It is in the public interest that the supply of commodities and services be undiminished and the cost not increased. From the standpoint of the public, however, it is immaterial whether the plaintiffs or others provide the services.

With the right of the plaintiffs to recover in some other action upon some other theory we have no concern. All that is before us is whether they have brought themselves within the purview of the Sherman Act, as amended. For the reasons already stated we agree with the district court's conclusion that they have not.

The judgment of the district court is affirmed.