William G. THEOPHIL, Plaintiff,

v.

SHELLER–GLOBE CORP. et al., Defendants.

No. 77 C 26.

United States District Court, E. D. New York.

Feb. 22, 1978.

Stacy L. Wallach, Tenzer, Greenblatt, Fallon & Kaplan, New York City, for plaintiff.

Jay Greenfield, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, argued, for defendant Sheller-Globe Corp.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Defendants move to dismiss this purported class action complaint which alleges in Count I violations of the Sherman and Clayton Acts, in Count II a common law conspiracy to defraud, and in Count III a common law claim for punitive damages. Defendants make the motion pursuant to Rules 12(b)(1), 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, and urge (1) that the complaint states no claim under the antitrust laws but merely a common law "fraud" claim, (2) that plaintiff as a retail consumer can show no injury to his "business or property" within the meaning of Section 4 of the Clayton Act, 15 U.S.C. § 15, and thus has no antitrust claim, and (3) that the action is barred by the four year statute of limitations in 15 U.S.C. § 15b. Defendants say that if the antitrust count falls, so do the pendent common law counts.

In substance the complaint alleges as follows. In March 1972 plaintiff bought from defendant Philbor Motors, Inc. ("Philbor") a motor home vehicle manufactured in April 1971 by defendant Sheller-Globe Corporation ("Sheller-Globe") and delivered by Sheller-Globe to Philbor in June 1971. Philbor sold to plaintiff under a "Manufacturer's Statement of Origin" and bill of sale designating the vehicle as a 1972 model. The thirteen defendants other than Philbor manufacture and distribute such vehicles to retailers throughout the United States.

Each vehicle is identified to the retail purchaser on the bill of sale and on the Manufacturer's Statement of Origin as belonging to a particular model year. This system of identification provides the dealers with a systematic method of representation to the public that a particular vehicle is the same in construction, component parts, styling, state of the art, and market value as other vehicles of the same model year and is different from those of another model year. The vehicles depreciate in market value throughout their model year. Defendants knew that the members of the plaintiff class of consumers place substantial significance on the model year in making purchases.

From in or prior to 1970 defendants and their dealers engaged in a conspiracy in restraint of trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, by making a series of agreements designed to raise and fix prices at which vehicles remaining unsold at the end of a model year would be sold in the following model year and to restrain competition in the sale of vehicles after the end of the model year. To effectuate the conspiracy the defendant manufacturers advised their retailers that on their request the manufacturers would issue for each vehicle remaining unsold at the end of the model year a new Manufacturer's Statement of Origin identifying the old vehicle "as being of the upcoming new model year."

The retailers made such requests, and the manufacturers responded as they had agreed. The retailers then represented to the general public that the old vehicles were of the new model year and offered them at the higher new model year prices.

The conspiracy had the effect of fixing prices at arbitrarily high and non-competitive levels and substantially restraining competition in the sale and distribution of vehicles.

Plaintiff purchased a vehicle identified as a 1972 model, when in fact it was a product of the 1971 year, and because of the intentional mislabeling plaintiff paid a price in excess of fair market value.

### I

Defendants first contend that while the facts pleaded support a common law case of

fraud they do not state a violation of Section 1 of the Sherman Act; that the antitrust laws were designed to make illegal those restraints of trade characteristic of restraints deemed illegal at common law, see *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 498, 60 S.Ct. 982, 84 L.Ed. 1311 (1940); and that a conspiracy to misrepresent should not be deemed a violation of the antitrust laws.

Section 1 of the Sherman Act, 15 U.S.C. § 1 provides in pertinent part that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." Defendants urge that their alleged activities do not constitute a "restraint" of trade within the meaning of this section.

Plaintiff maintains that this is a classic price fixing case, see, e. g., *United States v. Socony-Vacuum Oil Co., Inc.,* 300 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940), that conspiracies to fix prices are illegal whatever the method or machinery used to that end, and that the scheme here was designed for the express purpose of eliminating the normal year end competition in leftover models and raising artificially their prices to those of the following model year. The complaint alleges that the conspiracy in fact raised the prices of older models and eliminated or substantially restrained competition in their sale and distribution.

Although the complaint does not allege that the defendants agreed to adhere to a price schedule, that is not a prerequisite to a violation of the Sherman Act. *United States v. Container Corp. of America,* 393 U.S. 333, 334–5, 89 S.Ct. 510, 21 L.Ed.2d 526 (1969); *United States v. General Motors Corp.,* 384 U.S. 127, 147–8, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966). The fact that each defendant manufacturer was free to set its own price for old models, and agreed only that the starting point was that they would be treated as if they were new models, does not make the agreement any less a restraint of trade. "It *was* an agreed starting point; it had been agreed upon

between competitors; * * * it had to do with, and had its effect on, price." *Plymouth Dealers' Ass'n of No. Cal. v. United States,* 279 F.2d 128 (9th Cir. 1960) (emphasis in original).

Defendants argue, however, that the alleged nationwide conspiracy is immune from the antitrust laws because it resulted in a fraud on all the purchasers of older vehicles throughout the United States. Because presumably each defrauded consumer would have a remedy at common law against the defendant which sold him the vehicle, defendants contend that the broad language of the Sherman Act is inapplicable.

Such a contention is inconsistent with often repeated language of the Supreme Court that "the machinery employed by a combination for price fixing is immaterial." *United States v. Socony-Vacuum Oil Co., Inc., supra,* 310 U.S. at 222, 223, 60 S.Ct. at 844. Moreover, it is hard to think of any policy reason why defendants' argument should prevail in this case. It is true that it is important to maintain "a proper distribution between state and national governments" of remedies for wrongs, and that not every tort committed by a person engaged in interstate commerce contravenes the Sherman Act. *Apex Hosiery Co. v. Leader, supra,* 310 U.S. at 513, 60 S.Ct. at 1002; *Hunt v. Crumbach,* 325 U.S. 821, 826, 65 S.Ct. 1545, 89 L.Ed. 1954 (1945). No doubt there are instances in which an isolated fraud against an individual by two or more persons should not be swept up by the Sherman Act though the fraud has an effect on prices. See the dictum in *Coenen v. R. W. Pressprich Co.,* 453 F.2d 1209 (2d Cir.) cert. denied 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed. 337 (1972).

But where, as here, the deception is allegedly widespread throughout an entire sector of the automotive industry and is directed toward a concept, the model year, which the public associates with price, it is hard to believe Congress did not intend by the Sherman Act to make available a remedy under federal law.

To obtain a full measure of recovery under federal law plaintiff must prove not only a fraud by one defendant but also the widespread conspiracy. The amount of the damages is dependent not only on the fraud perpetrated by the defendant with whom plaintiff dealt but also possibly on the degree to which the conspiracy raised the price. This is thus no "common, garden variety" of common law fraud action into which plaintiff tossed "a few conclusory phrases to give the illusion of a triple-damage antitrust claim." *Coenen v. R. W. Pressprich & Co., supra,* at 1215–16.

Defendants urge that Judge Renfrew's opinion in *State of Arizona v. Cook Paint and Varnish Co.,* 391 F.Supp. 962 (D.Ariz. 1975), *aff'd on opinion below,* 541 F.2d 226 (9th Cir. 1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977), applies both in facts and rationale to the present case and holds that a claim of conspiracy to misrepresent product information is not actionable under the Sherman Act.

In the *Cook Paint* case the amended complaint, brought on behalf of a purported class of commercial and other users of rigid polyurethane foam insulation products against five manufacturers of such products, alleged that the defendants conspired to misrepresent the flammability characteristics of the products and that one of the effects of the misrepresentations was the raising and stabilizing of prices. Plaintiffs disclaimed any intention to allege that the purpose of the conspiracy was to establish higher prices. Judge Renfrew thus treated the conspiracy as "one the conscious purpose of which was the misrepresentation of flammability characteristics" of the products, one of the effects of which, but not the purpose of which, was the raising and stabilizing of prices. 391 F.Supp. at 965. He distinguished those cases involving conspiracies whose actual, as opposed to constructive, purpose was to affect prices, 391 F.Supp. at 966, and held that no "price fixing" case had been alleged.

Judge Renfrew then turned to plaintiffs' second theory, namely, that the cooperative false advertising of the flammability char-

acteristics was an unreasonable restraint of trade and that the conspiracy suppressed competition among the defendants in areas where they would have competed absent their conspiracy. He responded that this assertion "flies in the face of common sense." He reasoned that since the purpose of the alleged conspiracy was to conceal the flammability characteristics, "each of the defendants individually, with or without a conspiracy would have been required to conceal these flammability characteristics in order to insure the survival of its product as a marketable commodity." Thus, he said, the assertion that "absent the conspiracy the defendants would have competed to reveal the actual flammability characteristics * * * and that the conspiracy thus suppressed competition among them is simply untenable." 391 F.Supp. 969.

In my judgment the *Cook Paint* case is not applicable in facts or rationale to the present case. There Judge Renfrew treated the plaintiffs' grievance as a claim that, absent the misrepresentation, the product never would have been sold to them at all irrespective of price. He thus determined that the conspiracy could not have suppressed competition and accordingly that whatever the restraint it was not unreasonable. Here the conspiracy is alleged to have suppressed competition. On the price fixing claim plaintiffs in the *Cook Paint* case, in contrast to the present plaintiff, did not allege that the purpose of the conspiracy was to affect prices. Whether or not Judge Renfrew's distinction between the actual and the constructive purpose of the conspiracy is sound (as to which I state no opinion), the present case is distinguishable on his rationale.

Defendants also cite *Hill v. A–T–O, Inc.,* 535 F.2d 1349 (2d Cir. 1976), as authority for dismissal of the complaint. There the plaintiff claimed that defendants made fraudulent representations concerning vacuum cleaners. The representations were illegal under state and federal law, and defendants knew that other sellers would not engage in such conduct and thus could not, or would not, compete with defendants.

Even the plaintiffs did not have the heart on appeal to urge that they could transmogrify into an antitrust action such a claim that illegal practices gave defendants an advantage over more ethical sellers. 535 F.2d at 1356. The case does not require a dismissal here. Nor do the other authorities cited by defendants.

## II

Defendants also contend that plaintiff as a retail purchaser cannot show that he has suffered any injury to his "business or property" within the meaning of·Section 4 of the Clayton Act, 15 U.S.C. § 15, which permits "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" to bring suit.

If read literally this section would permit a retail purchaser to sue for his injury. He is a "person", and he has been injured in his pocketbook which ordinarily one would suppose to be a species of "property".

However one District Judge, Spencer Williams, in the Northern District of California has decided that Section 4 of the Clayton Act requires an injury "to a competitive interest in a business" and that retail consumer plaintiffs cannot recover. *Weinberg v. Federated Dep't Stores,* 426 F.Supp. 880, 885 (N.D.Cal.1977); *Gutierrez v. Gallo Co.,* 425 F.Supp. 1221 (N.D.Cal. 1977); *Smith v. Toyota Motor Sales, U.S.A., Inc.,* [1977–1] CCH Fed. Trade Cases ¶ 61,-251 (N.D.Cal.1977).

Other Federal judges have taken an opposing view and deemed a retail consumer injured in his "property" when he pays more as a result of an antitrust violation. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* [1977–2] CCH Fed. Trade Cases ¶ 61,639 (C.D.Cal.1977); *Reiter v. Sonotone Corp.,* 435 F.Supp. 933 (D.Minn.1977), see *Cleary v. Chalk,* 159 U.S.App.D.C. 415, 488 F.2d 1315, 1319 n.17 (1973), *cert. denied* 416 U.S. 938, 94 S.Ct. 1940, 40 L.Ed.2d 289 (1974).

■ I am of the opinion that Congress intended a retail consumer to have a remedy under Section 4 of the Clayton Act. The above reported decisions consider the relevant considerations on both sides of this issue, and no extended rehearsal of the conflicting arguments would be useful. The antitrust laws were designed for the ultimate benefit not of businesses but of the consumer, and it would seem anomalous to read the Clayton Act to exclude an action by the very persons sought to be protected. So far as the language of the Act is concerned, the remarks of Justice Holmes in *Chattanooga Foundry v. Atlanta,* 203 U.S. 390, 396, 27 S.Ct. 65, 66, 51 L.Ed. 241 (1906), appear still pertinent: one is injured in one's "property" when one is "led to pay more than the worth" of the article, and a person "whose property is diminished by a payment of money wrongfully induced is injured in his property."

This issue will undoubtedly be decided by the Supreme Court, and to the extent that it is possible to divine the result, I conclude that the Court believes that retail consumers do have standing to sue under the Clayton Act. That is certainly the purport of footnote 10 in the Court's opinion in *Brunswick Corp., v. Pueblo Bowl-o-Mat, Inc.,* 429 U.S. 477, 486, n.10 97 S.Ct. 690, 696 n.10, 50 L.Ed.2d 701 (1977). Moreover, on January 11 of this year the Court in holding that foreign governments were "persons" within the meaning of Section 4 of the Clayton Act repeatedly referred to those governments as "consumers". *Pfizer, Inc. v. Government of India,* —— U.S. ——, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978). The opinion proceeds on the assumption that a domestic retail consumer would have a claim. In short, both the dicta and the presuppositions in the recent Supreme Court opinions suggest that the Court will hold that a consumer such as the present plaintiff may sue under the Clayton Act.

## III

■ Defendants also urge that the claim is barred by the Clayton Act's four year statute of limitations. 15 U.S.C. § 15b. Plaintiff made the purchase in March 1972 and commenced the action in January 1977,

more than four years later. The complaint, however, pleads that the conspiracy was concealed by the defendants and that neither plaintiff nor the members of the class did, or could have in the exercise of due care, discovered the actual facts prior to June 1976. Concealment by defendants so that plaintiff did not know and with due diligence could not discover the conspiracy would toll the four year limitation. *Atlantic City Electric Co. v. General Electric Co.,* 312 F.2d 236 (2d Cir. 1962) *cert. denied* 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963); *Moviecolor Limited v. Eastman Kodak Co.,* 288 F.2d 80 (2d Cir.), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961); *Weinberger v. Retail Credit Company,* 498 F.2d 552, 555 (4th Cir. 1974).

Defendants claim that the complaint does not sufficiently allege concealment and due diligence and also assert that plaintiff had sufficient knowledge to warrant suspicion of an antitrust claim more than four years before the complaint was filed. They point to the fact that in January 1973 plaintiff served a complaint in a state court action against Philbor alleging a misrepresentation as to the model year.

Plaintiff contends that all he knew in 1973 was that his seller had misrepresented the model year of his vehicle. He claims to have known nothing of the conspiracy until 1976 when Philbor served an affidavit in the state action in opposition to plaintiff's motion for summary judgment. That affidavit stated, among other things, that when plaintiff purchased his vehicle "updating motor homes was a standard practice in the entire motor home industry." Plaintiff says that this was the first information he had from which he could conclude he had an antitrust claim.

This matter should not be decided on such a skimpy record. When the parties develop the full facts with respect to the issue it will be ripe for decision.

The motion is denied. So ordered.