**NORTHEAST WOMEN'S CENTER, INC.**

v.

**Robert McMONAGLE, et al.**

**Civ. A. No. 85–4845.**

United States District Court, E.D. Pennsylvania.

Oct. 25, 1985.

Edmond A. Tiryak, Philadelphia, Pa., for plaintiff.

Charles F. Volz, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

The plaintiff in this action is the Northeast Women's Center, Inc., a Pennsylvania corporation, which provides pregnancy testing, gynecological care, counseling and abortions to its clients. The defendants are a group of thirteen individuals, identified in their memorandum of law as "pro-life activists who have disrupted plaintiff's business activities." (defendants' memo at 1). The plaintiff has filed a complaint which lists actions by the defendants in furtherance of an alleged "conspiracy which has as its goal the destruction of plaintiff's business and property." (defendants' complaint at 1). The plaintiff is seeking injunctive relief and damages.

The defendants have filed a motion to dismiss the plaintiff's complaint under Rule 12 of the Federal Rules of Civil Procedure. The defendants contend that the court lacks subject matter jurisdiction under Rule 12(b)(1), that the complaint fails to state a claim under which relief can be granted under Rule 12(b)(6), and that the court should not hear the plaintiff's pendent state law claims in view of the absence of cognizable federal claims. For the following reasons, the court finds the defendants' contentions to be without merit and will deny the motion.

A complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In deciding whether to dismiss under Rule 12(b)(6), "factual allegations of the complaint are to be accepted as true", and "reasonable factual inferences will be drawn to aid the pleader." *D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). In order to dismiss under Rule 12(b)(1) for want of subject matter jurisdiction, the claims must be "... so insubstantial, implausible, foreclosed by prior decisions of this court or otherwise so completely devoid of merit so as not to involve a federal controversy within the jurisdiction of the District Court." *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 776–77, 39 L.Ed.2d 73 (1974).

The plaintiff's complaint includes three counts: a claim under the Racketeer Influ-

enced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, a claim pursuant to the antitrust laws, 15 U.S.C. §§ 1, 15; and pendent claims involving state law torts.

RICO COUNT

■ The defendants argue that the plaintiff's RICO count should be dismissed because the plaintiff fails to allege the defendants (1) committed predicate offenses, and (2) invested in an enterprise.

Section 1962 of the RICO Act provides that

It shall be unlawful for any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity.

A "pattern of racketeering activity" as defined by RICO, 18 U.S.C. § 1961(5), consists of the commission of two acts of racketeering activity as set forth in 18 U.S.C. § 1961(1), within ten years of one another. Paragraph 37 of the complaint alleges thirteen acts [1] of robbery were committed by the defendants on August 10, 1985. One of the "predicate acts" comprising "racketeering activity" under RICO is "any act or threat involving ... robbery ... which is chargeable under state law and punishable by imprisonment for more than one year". 18 U.S.C. § 1961(1)(A). Further, the complaint alleges a conspiracy to destroy a business engaged in interstate commerce, by means of robbery, theft, physical violence and threats of physical violence. This alleged conspiracy constitutes a violation of 18 U.S.C. § 1951; such a violation in turn constitutes a predicate act under RICO. 18 U.S.C. § 1961(1)(B). Thus, the plaintiff's RICO count cannot be dismissed for failure to allege the predicate acts required by the statute.

■ The defendants aver that "the assertions of racketeering are so plainly insubstantial as to be devoid of any merit." However, the recent case of *Sedima, S.P. R.L. v. Imrex Co., Inc.*, 473 U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) clarifies that if the plaintiff alleges that the defendants engaged in a pattern of racketeering activity in a manner forbidden by section 1962 and that the racketeering activities injured the plaintiff in his business or property, the plaintiff has stated a claim. Stating a claim pursuant to § 1962(c) requires alleging (1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima*, 105 S.Ct. at 3285. "But the statute requires no more than this. Where the plaintiff alleges each element of the violation, the comparable injury necessarily is the harm caused by the predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." *Id.* at 3286. Here, the plaintiff's have alleged all four elements and have described the defendant's enterprise as a "group of individuals who have entered into a conspiracy which has as its goal the destruction of plaintiff's business and property." (Complaint at 1).

■ The defendants are incorrect in contending that the RICO count must fail because the plaintiffs do not allege that the defendants invested in the enterprise. Sections 1962(b), (c) and (d) do not require investment by the defendants: the statute encompasses conduct related to the unlawful enterprise other than direct financial investment.

In summary, it cannot be said that no set of facts proven in relation to the plaintiff's complaint could result in liability for the defendants under RICO, thus, the plaintiff's RICO count will not be dismissed.

ANTITRUST COUNT

The complaint asserts that in acting to destroy the plaintiff's business, the defendants have violated "the Sherman Act," 15 U.S.C. § 1, which provides that "[e]very

---

1. For purposes of RICO, each act of criminal activity is counted as an act of racketeering activity even if numerous acts arise out of the same episode. See *United States v. Weatherspoon,* 581 F.2d 595, 601–02 (7th Cir.1978).

... combination ... or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal ..." For activities to constitute a Section 1 violation, the following five elements must be present: 1) the activities must be in or affect interstate commerce or foreign commerce; 2) the activities must be performed by two or more persons; 3) the activities must be the result of concerted action; 4) the concerted action must constitute a restraint on trade or commerce; and 5) the restraint must be unreasonable." II E.D. Kintner, *Federal Antitrust Law* § 9.1, 5 (1980). All five elements have been alleged in the plaintiff's pleading.

(1) "The test of jurisdiction is not that the acts complained of affect a business engaged in interstate commerce but that the conduct complained of affects the interstate commerce of such business." *Page v. Work*, 290 F.2d 323, 330 (9th Cir.) *cert. denied*, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961). The plaintiff states that it engages in interstate commerce (Complaint ¶ 4) and that the defendants have conspired to destroy the plaintiff's business (Complaint ¶ 21), inferring that destruction of the business would necessarily affect the interstate commerce of the business.

The Supreme Court has declared that "[i]f it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze." *United States v. Women's Sportswear Mfrs. Ass'n*, 336 U.S. 460, 464, 69 S.Ct. 714, 716, 93 L.Ed. 805 (1949). Discovery may reveal that the effect on interstate commerce of the alleged antitrust violation is not direct or substantial, but rather, is inconsequential and remote. The court may choose to refrain from sustaining federal antitrust jurisdiction upon such a finding. *See Page v. Work*, 290 F.2d at 332. However, presently, on the fact of the pleadings, the plaintiffs have alleged an affect on interstate commerce.

(2) The plaintiff has alleged the activities have been performed by thirteen persons. (Complaint ¶ 6–18).

(3) The plaintiff has alleged that the activities are the result of joint, concerted action by the individual defendants. (Complaint ¶ 1, 20, 21, 22). An express agreement or other direct evidence of the conspiracy need not be presented, as the necessary concerted action may be inferred from indirect evidence such as the "course of dealings or other circumstances." *American Tobacco Co. v. United States*, 328 U.S. 781, 809–10, 66 S.Ct. 1125, 1138–39, 90 L.Ed. 1575 (1946).

(4) and (5) Contracts, combinations and conspiracies which directly hinder or obstruct interstate commerce, and thus operate to the prejudice of the public interest by restricting competition or obstructing trade, are restraints on trade or commerce prohibited by the Sherman Act. *United States v. American Tobacco*, 221 U.S. 106, 179, 31 S.Ct. 632, 648, 55 L.Ed. 663 (1911). "The legality of an agreement or regulation cannot be determined by so simple a test, as whether it restrains competition ... the true test of legality is whether the restraint imposed is such as merely regulates ... competition or whether it is such as may suppress or even destroy competition." *Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918). The plaintiff has defined the defendants' alleged restraint of trade as actions intended to further the goal of destroying the plaintiff's business, largely through illegal practices. Thus, while discovery or trial may prove otherwise, as the pleadings now stand the plaintiff has alleged activities which may be found to be an unreasonable restraint.

The defendants argue the antitrust count should be dismissed, based on claims that the defendants are not in competition with the plaintiffs, and thus, that an "antitrust injury" has not been alleged; that the defendants' action are analogous to political campaigns or boycotts which fall outside of the scope of the Sherman Act; and that the defendants' motives and purposes are noncommercial in nature. Given the directive that factual allegations and inferences are to be read from the plaintiff's perspective when evaluating a Rule 12 motion to dis-

miss, none of these claims will support dismissal of the antitrust claim at this state of action.

The legislative history of the Sherman Act "provides an indication" that the bill's sponsors were concerned with competitors in commerce. *State of Mo. v. Nat. Organization for Women,* 620 F.2d 1301, 1309 (8th Cir.1980). However, certain courts have held that actions may be found to be within the scope of the Sherman Act even where the defendant is not an economic rival of the plaintiff and did not have an anti-competitive motive, if the effect of the actions complained of was to destroy a business. *See United States v. Realty Multi-List, Inc.,* ("*Realty Multi-List* ") 629 F.2d 1351, 1363–66 (5th Cir.1980); *e.g., Klor's Inc. v. Broadway-Hale Stores,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). The nature of the competition protected by the Sherman Act is revealed by the Supreme Court's statements of the Act's goals. For example, the Court has stated:

> The Sherman Act reflects a legislative judgment that ultimately competition will produce not only lower prices, but also better goods and services ... all elements of a bargain are favorably affected by the free opportunity to select among alternative offers.

*Nat'l Society of Prof. Engineers v. United States,* 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978). Thus, the essence of the competition covered by the Act is that choices be preserved, which does not necessarily entail that the parties to an action be business rivals. As the Fifth Circuit has stated, the nature of the competition protected by the Sherman Act cannot be simply equated with business rivalry. *Realty Multi-List,* 629 F.2d at 1363. "A practice is 'plainly anticompetitive' ... under the Sherman Act ... when it operates to deny to consumers the opportunity to choose among alternative offers without offering the possibility of any joint, efficiency-producing economic activities." *Id.* at 1364.

█ Here, the plaintiffs allege that the defendants' purpose is to destroy the plaintiffs' business; and the defendants state that a "moral, religious, political and philosophical animus exists between this plaintiff and these defendants." The plaintiff argues that the defendants' actions are focused on destroying the plaintiff's business in order to deny consumers the opportunity to choose the plaintiff's abortion services. The alleged injury which flows from these actions reflects the anticompetitive effect of the alleged violation, which under Clayton Act analysis, may qualify it as an "antitrust injury"—"the type the antitrust laws were intended to prevent". *Brunswick Corp. v. Pueblo Bowl-O-Matic, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (to recover treble damages on account of § 7 violations of the Clayton Antitrust Act, plaintiffs must prove "antitrust injury"). Thus, it is not dispositive for the defendants to argue that an antitrust injury has not occurred because the alleged violators are not doctors in direct competition for the plaintiff's clients. Additionally, Sherman Act violations cannot be tolerated "merely because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy." *Klor's Inc.,* 359 U.S. at 213, 79 S.Ct. at 710.

█ The defendants also argue that their alleged violative actions are analogous to political campaigns or boycotts which fall outside the scope of the Sherman Act. Political boycotts and attempts to influence legislation, standing alone, do not violate the antitrust laws. *See, e.g., Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136, 81 S.Ct. 523, 528, 5 L.Ed.2d 464 (1961) (attempts to enact legislation); *State of Missouri v. Nat. Organization of Women, Inc.,* 620 F.2d 1301 (8th Cir.1980) (political boycott designed to assist the passage of desired legislation did not violate the antitrust laws). However, not all actions with political overtones are protected from Sherman Act applicability. The *State of Missouri* holding specifically distinguishes situations where the intention of the alleged violators is to destroy a business enterprise and where there is no issue of the right to

petition for legislation. *Id.* at 1304, n. 4. The decision in *State of Missouri* cited *Council of Defense of the State of New Mexico v. International Magazine,* 267 Fed. 390 (8th Cir.1920), where a state-created council of defense's actions in boycotting a publishing company because of the pro-German sympathies of a stockholder were found to violate the Sherman Act. In *Council of Defense,* "the declared and obvious purpose was to destroy complainant's business in New Mexico", Id. at 411, and no issue of the right to petition was involved. Thus, the Sherman Act was held to apply. *State of Missouri,* 620 F.2d at 1304, n. 4.

Here, the complaint alleges that the defendants' primary purpose is to destroy the plaintiff's business. In contrast, in *State of Missouri,* the court established that the defendants' ultimate objective was to assist the passage of desired legislation, and that the economic harm resulting from the defendants' action was an intermediate goal in achieving that objective. *Id.* at 1314. It follows that on the basis of the plaintiff's pleadings, the instant case is not directly analogous to the political boycott in *State of Missouri,* or the publicity campaign in *Noerr Motor Freight,* and dismissal is not compelled at this stage by the reasoning presented in those decisions.

Finally, the defendants infer that the antitrust count should be dismissed because the defendants' purposes are noneconomic and noncommercial. While the Sherman Act is aimed primarily at combinations having commercial objectives, it has also been applied, albeit to a more limited extent, to organizations which normally have other objectives, *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 506–07, 60 S.Ct. 982, 999–1000, 84 L.Ed. 1311 (1940), such as labor unions, *Allen Bradley Co. v. Local 3, International Brotherhood of Electrical Workers,* 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945), or state appointed commissions, *Council of Defense of State of New Mexico,* 267 Fed. at 390.

▇ Therefore, it would be improper to dismiss the plaintiff's count pursuant to the defendant's motion on the basis of the defendants' inference that its objectives are noncommercial and noneconomic. Moreover, in a Rule 12 motion, the court is compelled to interpret the pleadings from the plaintiff's perspective, and here the plaintiff has characterized the defendants' objective as the destruction of a commercial business.

The court is aware that the Sherman Act does not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce, *Hunt v. Crumboch,* 325 U.S. 821, 826, 65 S.Ct. 1545, 1547, 89 L.Ed. 1954 (1945). The court also acknowledges that the pleadings do not portray a "typical" antitrust violation; the dissimilarity of the alleged combination to combinations normally held to violate the Sherman Act is disturbing. However, neither does the alleged combination fall very clearly into a category of political activity or of simple tortious action.

Facts have been alleged by the plaintiff from which it could be determined as a matter of law that, by reason of the defendants' intent or by the inherent nature of their acts, their alleged conspiracy was calculated to prejudice public interest by restricting commerce.

Thus, it cannot be said that *no* set of facts proven in relation to the plaintiff's complaint could result in liability for the defendants under the federal antitrust laws. At this stage, the plaintiff's antitrust count will not be dismissed for failure to state a claim or for want of federal jurisdiction.

STATE LAW CLAIMS

The complaint alleges RICO and antitrust causes of action, therefore, the defendants' request to dismiss the plaintiff's state law claims for want of a surviving federal claim, pursuant to *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), will be denied.