# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 97-4284

———————

National Parcel Services, Incorporated, \*
 \*
  Plaintiff - Appellant, \*
 \* Appeal from the United States
  v. \* District Court for the
 \* Southern District of Iowa
J. B. Hunt Logistics, Incorporated; \*
J. B. Hunt Transport, Incorporated, \*
 \*
  Defendants - Appellees. \*

———————

Submitted: June 10, 1998

Filed: August 10, 1998

———————

Before LOKEN and HEANEY, Circuit Judges, and JONES,[*] District Judge.

———————

LOKEN, Circuit Judge.

National Parcel Service is a "zone skipper," a shipping company that receives packages from mail order and retail catalog merchants and delivers them in bulk to United States Postal Service (USPS) bulk mail distribution centers. This enables NPS

———————————————

[*]The HONORABLE JOHN B. JONES, United States District Judge for the District of South Dakota, sitting by designation.

to charge lower prices than United Parcel Service (UPS), because UPS charges a premium for residential deliveries, and to offer faster service than USPS.

J.B. Hunt Transport is a large interstate trucking company. In mid-1994, a J.B. Hunt subsidiary entered the zone skipping business, targeting the customers of NPS and a third zone skipper, CTC, with low prices. J.B. Hunt's early strategy was to make "whatever price concessions you need to give or whatever, get us in the business quickly." At a meeting between representatives of J.B. Hunt and NPS, an NPS principal asked the J.B. Hunt representative why he had suggested the meeting. The answer was, "Well, I'm not going to buy you. Why would I buy you? I'd just take you out." J.B. Hunt's revenues grew quickly at its competitors' expense. Not surprisingly, NPS lost business and J.B. Hunt lost money. NPS responded with this lawsuit, seeking damages for predatory pricing under the federal antitrust laws and the Iowa law of interference with prospective advantage. The district court[1] granted summary judgment in favor of the J.B. Hunt defendants, and NPS appeals. We affirm.

To establish competitive injury for a predatory pricing claim under § 2 of the Sherman Act, 15 U.S.C. § 2, plaintiff must prove "that the prices complained of are below an appropriate measure of its rival's costs," *and* "that the competitor had . . . a dangerous probability of recouping its investment in below-cost prices." Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 222-24 (1993). Here, NPS cannot show a dangerous probability of recoupment because UPS and USPS can always take over or eliminate the zone skipping "niche" market should a competitor like J.B. Hunt or NPS begin charging supracompetitive prices and reaping monopoly profits. Unfair pricing antitrust claims should be viewed with "great caution and a skeptical eye." Bathke v. Casey's General Stores, Inc., 64 F.3d 340, 343 (8th Cir. 1995). The district court properly dismissed this claim.

_____

[1]The HONORABLE ROBERT W. PRATT, United States District Judge for the Southern District of Iowa.

-2-

NPS's state law tort claim is for interference with its relations with one customer who succumbed to J.B. Hunt's better prices. Following the Restatement (Second) of Torts for competitive torts, Iowa law requires proof of "improper" interference. See Nesler v. Fisher & Co., 452 N.W.2d 191, 196-99 (Iowa 1990). In determining what is improper, the Restatement recognizes that vigorous competition is desirable, not tortious. See Restatement (2d) Torts § 768. Reflecting that principle, the Supreme Court of Iowa has held that intentional interference with prospective advantage requires proof of a "predominant purpose" to injure or destroy the plaintiff. See Berger v. Cas' Feed Store, Inc., 543 N.W.2d 597, 599 (Iowa 1996); Wilkin Elevator v. Bennett State Bank, 522 N.W.2d 57, 62 (Iowa 1994). NPS argues it has sufficient evidence of such a purpose -- the statement by J.B. Hunt that it could "take you out." One court has persuasively suggested that intent is not a useful standard for distinguishing between actionable predatory pricing and healthy price competition because hard competition necessarily entails injuring unsuccessful competitors, and "you cannot be a sensible business executive without understanding the link among prices, your firm's success, and other firms' distress." A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc., 881 F.2d 1396, 1401-02 (7th Cir. 1989), cert. denied, 494 U.S. 1019 (1990). For this reason, we are uncertain whether the Supreme Court of Iowa would apply its "predominant purpose" test when the alleged interference is predatory pricing. But in any event, we agree with the district court that the passing remark by J.B. Hunt that it could "take you out" is not the kind of competitive threat that will support a prima facie case of tortious interference. Cf. Fischer v. UNIPAC Serv. Corp., 519 N.W.2d 793, 800 (Iowa 1994).

Accordingly, we affirm.

HEANEY, Circuit Judge, concurring in part and dissenting in part

I agree with the majority that, as a matter of law, NPS failed to establish a violation of federal antitrust law. In my view, however, the district court erred by holding that as a matter of Iowa state law, J.B. Hunt did not have the predominant

purpose of injuring or destroying NPS.  There was more than sufficient evidence to present this issue to a jury.  For this reason, I respectfully dissent.

Under the Iowa law of interference with prospective advantage, NPS was required to prove five elements as part of its prima facie case:  "(1) that it had a prospective contractual or business relationship; (2) that defendant knew of the prospective relationship; (3) that defendant intentionally and improperly interfered with the relationship; (4) that defendant's interference caused the relationship to fail to materialize; and (5) the amount of the resulting damage."  Preferred Marketing Assocs. v. Hawkeye Nat'l Life Ins., 452 N.W.2d 389, 396 (Iowa 1990) (citation omitted).  As the majority correctly points out, NPS was required further to show that J.B. Hunt's predominant purpose was to injure or destroy NPS.  In this regard, there remain genuine issues of material fact warranting a trial.

When NPS's president, John Krusenstjerna, met with J.B. Hunt's manger, Donald Swanson, Swanson stated:  "I'm not going to buy you.  Why would I buy you? I'd just take you out."  Swanson also stated that Hunt decided to try and take NPS out of the zone-skipping market because "you were the easiest."  J.B. Hunt immediately targeted NPS's most lucrative client, offered prices well below market costs, took a significant loss, and within a short time of  Krusenstjerna's and Swanson's meeting, NPS was forced to leave the zone-skipping market.

In Willey v. Riley, 541 N.W.2d 521 (Iowa 1995), the Iowa Supreme Court stated that in order to demonstrate that a defendant's predominant purpose was to injure or destroy the plaintiff, a plaintiff must present evidence of "intent" and mere "[s]peculation . . . is not evidence" warranting that a case be submitted to a jury.  Id. at 527.  In this case, NPS presented evidence in the form of Swanson's statements to Krusenstjerna that J.B. Hunt had the intent to take NPS out of the market.  Rather than NPS merely speculating that this was the case, Swanson said as much to Krusenstjerna.

Coupled with this intent, J.B. Hunt's subsequent conduct certainly raises genuine issues of material fact as to its predominant purpose.

The majority's correct resolution of the federal claim should not confuse the issue of the state law claim.  In <u>Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.</u>, 509 U.S. 209 (1993), the United States Supreme Court stated:

> Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or "purport to afford remedies <u>for all torts committed</u> by or against persons engaged in interstate commerce."

<u>Id.</u> at 225 (quoting <u>Hunt v. Crumboch</u>, 325 U.S. 821, 826 (1945) (emphasis added)). Because there are genuine issues of material fact, a jury should determine whether J.B. Hunt committed a tort.  In short, I would reverse on the state law claim and remand this case to the district court.  On remand, the district court could retain jurisdiction over the case, <u>see</u> 28 U.S.C. § 1367(a), or exercise its discretion in dismissing the claim without prejudice.  <u>See</u> <u>id.</u> §§ 1367(c), 1367(d).

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.